SIMON N. BALDWIN v. THE CITY OF HASTINGS.

83    639
139   161

*Municipal corporations—Exemption of property from taxation for fire-department purposes.*

1. A provision in a city charter exempting from taxation for fire-department purposes all unplatted parcels of land containing ten or more acres, and used exclusively for farming purposes, is a reasonable and valid one, and cannot be disregarded by the city authorities without a breach of faith, which the courts will not permit.

2. A city charter exempted parcels of unplatted land of a specified acreage, and used exclusively for farming purposes, from taxation for fire-department purposes. The city constructed water-works under the general statute of the State for the purpose of supplying the city and its inhabitants with water, which

were also used for fire purposes. Taxes were levied upon land falling within the charter exemption to pay interest on the water-works bonds, which the owner paid under protest, and then sued the city to recover back the money, upon the ground that the use of the water for fire purposes exempted plaintiff from paying any portion of the expense of the water supply. In affirming a judgment in favor of the city the Court say:

*a*—The plaintiff is as much bound to contribute towards the expense of a water supply for all except fire purposes as are other property-owners, and it is not necessary for his protection that he escape his share of this *legal* tax because the city chooses also to furnish water for fire purposes.

*b*—The city being authorized to raise a tax for fire purposes, and the treasurer being required to keep the several funds separate, and to pay every warrant out of the particular fund upon which it is drawn, and the fund raised for fire purposes being one to which the plaintiff has not contributed, the city, as the owner of the water-works, should treat the fire-department as a customer, and should require to be paid from the fire-department fund into the fund raised for water supply, and for paying the water-works bonds, a fair and reasonable sum for the use of water for fire purposes.

*c*—It does not follow because no agreement has been made for such payment, or for the free use of water for fire purposes, that a proper adjustment of the matter has not been contemplated by the city authorities in the end, and the Court will not assume that the city will act unjustly in the premises, as it certainly would if it continued unreasonably to supply water to the fire department without charge, in which event the plaintiff would not be without a remedy.

*d*—The rule that where a portion of a tax is illegal, and a tax-payer has no way of separating it from the legal portion, he is not bound to pay any of the tax, cannot be applied in this case.

Error to Barry. (Hooker, J.) Argued October 10, 1890. Decided December 24, 1890.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Smith & Colgrove,* for appellant.

*Stuart, Knappen & Weaver,* for defendant.

CAHILL, J. The plaintiff brought this action of *assumpsit* to recover from the city of Hastings certain taxes paid to the treasurer of said city for the year 1887, under protest. In addition to the taxes paid by him individually, he claims as assignee of certain other persons similarly situated, the entire amount claimed being $127.50. The plaintiff claims the taxes were assessed and levied without authority of law, and that the taxes were illegal and void.

The case was tried before the Honorable Frank A. Hooker, circuit judge, without a jury, who made and filed the following findings of fact and conclusions of law thereon:

"1. The defendant is the city incorporated by Act No. 386 of laws of 1875.[1]

"2. Section 32 of same act authorizes the common council of said city to levy and collect taxes not to exceed $\frac{1}{4}$ of 1 per cent. on the valuation, exclusive of the expenses of the fire department, which shall not exceed $\frac{1}{4}$ of 1 per cent. in addition thereto, in any one year: *Provided*, that all parcels of land of 10 acres or more used exclusively for farming purposes, and not laid out into city lots, shall be exempted from the taxes provided by this section for the fire-department purposes.

"3. August 23, 1886, the common council adopted by yeas and nays a resolution submitting to the electors of said city a proposition to borrow the sum of $30,000 upon the bonds of said city, for the sole purpose of supplying said city and the inhabitants thereof with water:

"'*Resolved*, that the common council of the city of Hastings shall, if approved by the electors of said city of Hastings, borrow a sum of money, not to exceed thirty thousand dollars, to be used exclusively for the purpose of purchasing grounds, rights, privileges, materials, and in making improvements connected with and for the sole purpose of supplying the city of Hastings aforesaid, and the inhabitants thereof, with water; said money to be borrowed at a rate of interest not to exceed five per cent. per annum, and the same to be payable as follows, viz.: Five thousand dollars in

---

[1] Amendatory of Act No. 216, Laws of 1871.

83 MICH.—41.

five years from date of loan; five thousand dollars in ten years from date of loan; five thousand dollars in fifteen years from date of loan; and the balance, not exceeding thirty thousand dollars in total, in twenty years from date of loan.

" 'Resolved, that the question of borrowing said sum of money at a rate of interest not exceeding five per cent. per annum, upon the terms above specified, and for the purpose above stated, be submitted to the electors of said city of Hastings, for their ratification and approval or rejection, at a special election to be held for that purpose on Monday, the 13th day of September, A. D. 1886.'

"4. At an election held upon the day designated, the resolution was adopted by a majority of the electors of said city voting at said election voting therefor by ballot.

"5. The council subsequently issued the bonds of said city to the amount of $30,000, and borrowed money thereon, and constructed water-works for said city therewith.

"6. In constructing said water-works, a well from 20 to 30 feet in diameter was sunk for the purpose of procuring pure water for domestic purposes. Thirty-nine hydrants for fire purposes were placed at the intersection of streets, and provisions were made for the use of water for various private and public purposes. In the construction of this system of water-works 39 hydrants were placed by the contractor, under contract with the city therefor, at the intersection of streets. These hydrants are used for the sprinkling of streets, and for cleaning the gutters and streets. At the time of the trial of this cause, some of these hydrants had once been used for fire purposes, by attaching hose directly to them, the water being thrown by means of the direct pressure from the pumps at the water-works.

"7. In raising taxes for said city, and for the year of 1887, the council included an amount to cover the interest upon said bonds.

"8. A number of residents of said city owning parcels of land of more than 10 acres each, used exclusively for farming (and residence) purposes, and not laid out into city lots, were taxed for said interest, and paid the same under protest. At the time of the levying of the tax in question there had been made no contract or agreement by which the fire department paid for the use of these hydrants, or for water used by the fire department for

fire purposes from said water-works, nor had either the common· council of the city or its board of water commissioners entered into any contract or agreement to furnish water to the fire department without compensation therefor.

"9. The claims of said persons were duly assigned to the plaintiff before the commencement of this action; and amounted to the sum of $127.50. They were paid February 25, 1888.

"10. The fire department of said city makes use of and principally depends. on said water-works for water used in extinguishing fires, though but one fire has occurred since said works were constructed. The fire department still has and maintains the same cisterns and reservoirs filled with water since as before the construction of the water-works, and the same equipments for fire purposes are still owned and kept on hand for use if required, or when required. The cisterns and pumping machinery of the· fire department have not actually been used since the completion of the system of water-works.

## "LAW.

"1. Section 32 of the charter exempts farming lands from certain taxes provided for by said section for fire-department purposes.

"2. The water-works in question are not provided for by said section or act, but were constructed under How. Stat. § 3090 et seq.

"3. It follows that plaintiff cannot recover, and defendant should have judgment for costs."

Judgment was duly entered on the findings, and the plaintiff brings error. The only question that is open to us is, do the findings of fact support the judgment? We are of the opinion that they do. The plaintiff and his assignors are entitled to be protected, under the provisions of section 32 of the charter, from the payment of any taxes levied for fire-department purposes in the city. This provision of the charter is a reasonable and valid one, and cannot be disregarded by the city authorities without a breach of faith, which the courts will not permit. But the weakness of the plaintiff's case lies in the fact that the tax complained of was not, so

far as this record shows, levied for fire-department pur-
poses. It was levied to pay the interest on a debt con-
tracted "for the purpose of supplying said city and the
inhabitants thereof with water." It is insisted that,
because certain hydrants have been put in, and are used
in part for fire purposes, plaintiff and his assignors are
exempt from paying any part of the expense of the
water supply. But that would not be just. They are
as much bound to contribute towards the expense of a
water supply for all except fire purposes as are any other
property-owners. This the plaintiff would not deny, if
the water was only to be supplied to the city for flush-
ing sewers, sprinkling and cleaning the streets, and to
the inhabitants for domestic uses. The circuit judge
finds that the supply of water was obtained and used
for such purposes. Shall the plaintiff escape his share
of this legal tax against him, because the city chooses
to furnish water for fire purposes also? That is not at
all necessary for the protection of plaintiff's rights under
the charter. The city is authorized to raise a tax for
fire purposes, and by section 21 of the charter (2 Laws
of 1871, p. 299) the treasurer of the city is required to
keep the several funds raised by tax for various purposes
separate, and to "pay every warrant out of the particu-
lar fund upon which it is drawn." As the fund raised
for fire purposes is one to which plaintiff and those simi-
larly situated have not contributed, the city, as the
owner of the water-works, should treat the fire-depart-
ment as a customer, and should require to be paid from
the fire-department fund into the fund raised for water
supply, and paying the debt, a fair and reasonable sum
for the use of the hydrants for fire purposes. The find-
ing of the circuit judge is that no contract or agreement
had been made by which the fire department paid for
the use of the hydrants or for water for fire purposes,

or by which the water was to be furnished free. It does not follow that a proper adjustment of the matter has not been contemplated by the city authorities in the end. What would be a fair and reasonable sum for the fire department to pay cannot be told without trial and experiment. We cannot assume that the city will act unjustly in the premises, as would certainly be the case if it continued unreasonably to supply water to the fire department without charge. In such an event the plaintiff, and those situated like him, would not be without remedy. On this record, however, we cannot say that the whole, or what part, of the tax complained of, was levied for fire-department purposes. There is no basis on which the plaintiff could recover the whole tax, nor can we say from this record what part of it he is entitled to recover.

It may be said that the plaintiff is not responsible for any difficulty that may exist in separating that part of this tax which he ought to pay from that part which he is exempt from paying; that, as he has no way of separating the legal from the illegal, he was not bound to pay any of it; and this would be the rule in cases where a part of the tax was clearly illegal. But that rule cannot be applied here. It is wholly impracticable for the city to determine with certainty what part of the aggregate cost of the water-works is chargeable to the desire for fire protection, and what to the desire for water for other purposes. Every item of cost in the equipment, including the hydrants, would be necessary if the use for fire purposes was not contemplated at all. Any estimate of the share or proportion of the aggregate cost that would be properly chargeable to fire purposes must be largely a matter of conjecture. If the city had proceeded on that theory, and had divided the tax, we can see no ground for relief for the plaintiff, however much he might be

dissatisfied with the division. The situation is peculiar, and one that needs to be considered from the standpoint of equity and fair dealing between the city and the plaintiff, and we have no doubt it will be so treated.

Errors are assigned upon the neglect and refusal of the circuit judge to find certain facts which it is claimed were proven in the case; but as no bill of exceptions was settled, and the evidence is not returned, we cannot say that the circuit judge was in error.

The judgment is affirmed, with costs.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred. LONG, J., did not sit.